[Cite as *Cleveland v. Yontosh*, 2013-Ohio-3137.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No.   99076

---

## CITY OF CLEVELAND

### PLAINTIFF-APPELLEE

vs.

## ASHLEY YONTOSH

### DEFENDANT-APPELLANT

---

## JUDGMENT:
### AFFIRMED

---

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2012-CRB-012875

**BEFORE:**   E.A. Gallagher, J., Stewart, A.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**   July 18, 2013

**ATTORNEY FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender

By:   Erika B. Cunliffe
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, OH    44113


**ATTORNEYS FOR APPELLEE**

Victor R. Perez
Chief Assistant Prosecutor
City of Cleveland
By:   Angela Rodriguez
Assistant City Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH    44113

EILEEN A. GALLAGHER, J.:

{¶1} Ashley Yontosh appeals from the decision of the trial court finding her guilty of criminal damaging. Yontosh argues that the city of Cleveland failed to support her conviction with sufficient evidence and that her conviction is contrary to the manifest weight of the evidence. Finding no merit to the instant appeal, we affirm the decision of the trial court.

{¶2} On the evening of April 18, 2012, Cleveland Police Officer Ray O'Connor and his partner responded to a home on Natchez Avenue for a complaint of loud music. When they arrived at the location, they encountered Yontosh in the driveway. Officer O'Connor testified that when he informed Yontosh of the noise complaint, she responded with obscenities and shouting. Officer O'Conner testified that he issued Yontosh a citation for loud music.[1]

{¶3} Officer O'Connor testified that approximately six minutes later, Officer O'Connor received a second dispatch to the Natchez home with complaints of a female in front of the residence shouting obscenities. Officer O'Connor and his partner returned to the home and spoke with Yontosh and Jeffrey Clinigan, Yontosh's live-in boyfriend. Both denied shouting obscenities but as they were speaking to Officer O'Connor, Yontosh pointed at a female on the sidewalk and said "that's the fucking bitch that's been

_____
[1]The Cleveland Municipal Court docket reveals that the officer issued the citation to Jeffrey Clinigan, Yontosh's live-in boyfriend.

calling the police on us."   Officer O'Connor testified that Yontosh had pointed to Kelly Reilly, a Cleveland Police Department dispatcher who lived two doors down from Yontosh.   Officer O'Connor spoke with Reilly, who denied calling the police regarding Yontosh that night or at any earlier time.

{¶4}   Shortly after midnight, Reilly was moving to sit on her couch in the living room of her upstairs apartment when she observed Yontosh run across the neighbor's property and she heard Yontosh run up onto her front porch; after which she heard glass breaking.   Reilly then observed Yontosh running off of the porch and into a nearby car. Reilly explained that she lived on the second floor of a duplex and that, although the front porch obstructed her view of the glass being broken, she clearly saw Yontosh immediately before, and after, hearing the glass break.   Reilly also testified that no one else was on the porch at the time she heard the sound of glass breaking.   Reilly contacted the police and photographed the damage.

{¶5}   On April 25, 2012, the city of Cleveland issued a complaint for criminal damaging against Yontosh.   Yontosh pleaded not guilty and the case proceeded to a bench trial.   The city presented the testimony of Officer O'Connor and Reilly.   In response, Yontosh presented the testimony of Micah Wilson and Michael Metcalf. Wilson and Metcalf drove to the Yontosh residence together that evening and were guests of Jeff Clinigan, whom they knew from work.   Wilson testified that after the police came about the noise violation, everyone, including Yontosh, went inside the house. Wilson also testified that after the police arrived a second time, he heard Yontosh

complain that people always called the police when she and Jeff played their music. Wilson testified that he never saw Yontosh leave her house before he left that evening. Wilson did testify that Metcalf left the house and, upon his return, told Wilson that he knocked on the neighbor's window and it broke.

{¶6} The defense then called Michael Metcalf to the stand. Metcalf testified that he, Wilson, Clinigan and Yontosh were in the backyard of the residence having a small party, that he was present when the police arrived both times and that between the first and second occurrence, he saw Yontosh yelling obscenities outside of the house. Metcalf testified that after the police came a second time, he told police that he would turn off the music and that he and his friend were leaving. At that point in his testimony, Metcalf requested an attorney because of a fear of self-incrimination. The court assigned counsel and allowed a brief recess. When questioning continued, Metcalf testified that before leaving Yontosh's house, he went to the next door neighbor's house. Metcalf did not testify further and the defense rested.

{¶7} The court found Yontosh guilty of criminal damaging and sentenced her to a $750 fine, 90 days in jail, one year active probation, $200 in restitution and ordered her to attend the Community Awareness Program. The court suspended $500 of the fine and all 90 days in jail.

{¶8} Yontosh appeals and raises the following assignments of error:

Ashley Yontosh was deprived of her liberty without due process of law where the trial court found her guilty of causing criminal damage to property even though the evidence of guilt was insufficient as a matter of

law.

> Ashley Yontosh was deprived of her liberty without due process of law, where her conviction for criminal damage to property is contrary to the manifest weight of the evidence.

{¶9} Although these assignments of error involve different standards of review, we shall address them together because the record and the facts apply equally to both. Sufficiency of the evidence is the legal standard that is applied to determine whether the evidence is legally sufficient to support a jury verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. Legal sufficiency is a test of adequacy and is a question of law. *Id.*, citing *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955). When determining sufficiency of the evidence, we must consider whether, after viewing the probative evidence in a light most favorable to the prosecution, any rational trier of fact could have found all the elements of the offense proven beyond a reasonable doubt. *State v. Caraballo*, 8th Dist. No. 89775, 2008-Ohio-5248.

{¶10} Although a judgment of a trial court is sustained by sufficient evidence, an appellate court may nevertheless find that the verdict is against the manifest weight of the evidence. *Thompkins*, *supra*, citing *Robinson* at 487. Sitting as the "thirteenth juror" in a manifest weight argument, an appellate court reviews the entire record, weighs the evidence and all the reasonable inferences, considers the credibility of the witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a

new trial ordered. *Caraballo*. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *Thompkins; Robinson; Caraballo*.

{¶11} In assessing the credibility of witnesses, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). "The fact finder is free to believe all, part, or none of the testimony of each witness appearing before it." *Caraballo*, citing *Warren v. Simpson,* 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073 (Mar. 17, 2000).

{¶12} After a bench trial, the court convicted Yontosh of criminal damaging, which, pursuant to Cleveland Codified Ordinances 623.02 provides:

> (A) No person shall cause, or create a substantial risk of physical harm to any property of another without his or her consent:
>
> (1) Knowingly, by any means.

{¶13} The evidence presented at trial established all of the elements necessary to sustain Yontosh's conviction for criminal damaging. Yontosh denied any liability for the broken window and claimed that Michael Metcalf actually broke the glass. Additionally, Yontosh argued in her brief that Reilly's testimony about what she observed that evening is not possible given the leaves on the trees and the position of her second-floor window.

{¶14} Although Yontosh claims that another individual was responsible for breaking the window, that claim is not borne out in the facts before the court. Metcalf did not testify to breaking the glass. Wilson testified that Metcalf told him that the glass broke when he knocked on the door. There were no witnesses to this alleged accident. In fact, this testimony is completely contradicted by the victim, who related that she did not observe anyone on her front porch other than Yontosh and that after Yontosh walked onto her front porch, she heard glass breaking and then watched as Yontosh ran and got into a nearby vehicle. While defense counsel attempted to discredit Reilly's ability to observe Yontosh on her front porch that evening, Reilly never wavered on her testimony that she saw Yontosh walk onto her porch, she heard glass breaking and then saw Yontosh run away.

{¶15} Thus, a review of the record convinces us that the city's evidence, taken in its entirety, was sufficient to sustain Yontosh's conviction for criminal damaging.

{¶16} Additionally, Yontosh's conviction is not against the manifest weight of the evidence. The credibility of the witnesses and the weight to be given their testimony were matters for the court to resolve. *State v. Cantrell*, 2d Dist. No. 25192, 2013-Ohio-39. Yontosh presented evidence that she never approached the victim's residence that evening. Additionally, Yontosh attempted to undermine the city's case by pointing out inconsistencies in Officer O'Connor's testimony and questioning Reilly's ability to see anyone on her front porch that evening given the limitations of the view. Nevertheless, the court did not lose its way simply because it chose to believe the

evidence provided by the city's witnesses. Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against a conviction, or that a manifest miscarriage of justice has occurred.

{¶17} Yontosh's single assignment of error is overruled.

{¶18} The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

SEAN C. GALLAGHER, J., CONCURS;
MELODY J. STEWART, A.J., CONCURS IN
JUDGMENT ONLY